

UNITED STATES DISTRICT COURT

THE DISTRICT OF OREGON

PORTLAND DIVISION

CAROLINE C. PEREZ and MARIA T.
PEREZ, individually and on behalf of
all others similarly situated,

                            Plaintiffs,

      v.

DEL MONTE FRESH PRODUCE N.A.,
INC., a Florida Foreign Business
Corporation,

                           Defendant.

CV. 10-675-AC

FINDINGS AND
RECOMMENDATION

ACOSTA, Magistrate Judge:

### Findings and Recommendation

Caroline C. Perez and Maria T. Perez (collectively "Plaintiffs"), filed this action in state court

on behalf of themselves and similarly situated individuals against their past employer Del Monte

Fresh Produce ("Del Monte") for violation of wage and hour laws and breach of contract. Del Monte

removed the action to this court asserting the existence of diversity jurisdiction under 28 U.S.C. §§ 1332(a) and (d). Presently before the court is Plaintiffs' motion to remand. The court finds that Del Monte has failed to establish that either of the named plaintiffs has a claim in excess of $75,000 as required under § 1332(a) or that the claims of the putative class exceed $5 million as required under § 1332(d). Accordingly, Plaintiffs' motion to remand should be granted.

*Background*

These parties and this action are before this court for a second time. The first action, *Perez v. Del Monte Fresh Produce N.A., Inc.*, CV No. 09-1194-AC, was removed to this court on October 8, 2009, and remanded back to state court on April 2, 2010 ("First Action").

On June 17, 2009, Plaintiffs filed a class action complaint in the Circuit Court of the State of Oregon for the County of Multnomah (the "Complaint"). (Notice of Removal, Ex. 1 at 1-8.) In the Complaint, Plaintiffs defined the class as "persons who worked at Del Monte's produce packing plant in Portland, Oregon, during the period from after June 12, 2007, through the date of filing this action; and for those employed thereafter with respect to any violation of wage and hour law alleged herein, until such time as Del Monte complies with the law," and further alleged that class members were "minimum wage or close to minimum wage workers." (Notice of Removal, Ex. 1 at 2-3.) Plaintiffs alleged that Del Monte breached Oregon's wage and hour laws by failing to pay them for preparatory and concluding activities, such as "time spent locating, obtaining, donning, doffing, and returning their uniforms and protective equipment," failing to provide uninterrupted meal periods, and failing to provide paid, uninterrupted ten-minute rest periods for each four hours worked. (Notice of Removal, Ex. 1 at 2.) As a result of these violations, Del Monte allegedly underpaid each of the class members by at least thirty minutes for each full day of work, failed to pay overtime to

class members who worked more than 10 hours per day or more than 40 hours per week, and breached a settlement agreement entered into in late July 2006, in which Del Monte agreed to comply with state law in all of the above particulars ("Settlement Agreement"). (Notice of Removal, Ex. 1 at 2-7.) Plaintiffs sought a declaration that Del Monte had violated wage and hours laws, and the Settlement Agreement; an injunction prohibiting Del Monte from engaging in such violations in the future; and reasonable costs and attorney's fees. (Notice of Removal, Ex. 1 at 7-8.)

Del Monte moved to dismiss the Complaint asserting that Plaintiffs had failed to join a necessary party. (Notice of Removal, Ex. 1 at 9.) Del Monte argued that it was not the employer of Plaintiffs and, therefore, was not liable for violations of the wage and hour laws. (First Action Notice of Removal, Ex. 1 at. 13-15.) Del Monte represented that "Plaintiffs are presumed to have been employed by Real Time Staffing Services, Inc., dba Select Staffing" ("Select Staffing") and offered in support of this representation a Temporary Worker Agreement between Del Monte and Select Staffing dated June 18, 2007, and effective for a term of one year ("Worker Agreement"). (Notice of Removal, Ex. 1 at 14, 20-30.) Attached as an exhibit to the Worker Agreement was a list of worker classifications and related bill rates. The regular time bill rates with a 1.32 markup ranged from $10.39 for a production worker to $13.53 for a sanitation III worker, which represents an hourly wage range of $7.87 to $10.25. (Notice of Removal, Ex. 1 at 28.)

On July 23, 2009, Plaintiffs filed an amended complaint ("First Amended Complaint"). (Notice of Removal, Ex. 1 at 34-42.) Plaintiffs dropped their claims based on Del Monte's failure to provide uninterrupted ten-minute rest periods except with regard to the breach of the Settlement Agreement, deleted their allegations that all class members are minimum or close to minimum wage workers and the inclusion of all future employees in the class, and added claims for damages for

unpaid wages (including overtime, minimum, and wrongfully deducted wages), statutory damages, and contract damages. (Notice of Removal, Ex. 1 at 34-42.) Del Monte moved to dismiss the First Amended Complaint for failure to state ultimate facts sufficient to constitute a claim, without waiving any of its prior motions. (Notice of Removal, Ex. 1 at 107.)

On September 4, 2009, Plaintiffs moved for leave to file a second amended complaint which set forth, with specificity, the amount of damages sought by the Plaintiffs ("Second Amended Complaint"). (Notice of Removal, Ex. 1 at 138.) Caroline Perez, who worked for Del Monte from March 2008 to July 2008, and February 2009 to April 2009, sought damages not to exceed $1,344.96 in overtime wages with a related penalty of $3,996.00; damages not to exceed $704.20 in unpaid minimum wages with a related penalty of $3,996.00; damages not to exceed $896.40 in unpaid wages on her failure to pay wages claim; damages not to exceed $2,943.76 in unpaid wages for the breach of the Settlement Agreement; and damages not to exceed $560.25 in wrongfully deducted wages. Maria Perez, who worked for Del Monte from July 2007 to March 2009, sought damages not to exceed $4,789.00 in overtime wages with a related penalty of $2,160.00; damages not to exceed $105.60 in unpaid minimum wages with a related penalty of $2,160.00; damages not to exceed $3,193.20 in unpaid wages on her failure to pay wages claim; damages not to exceed $8,088.60 in unpaid wages for the breach of the Settlement Agreement; and damages not to exceed $2,025.00 in wrongfully deducted wages. (Notice of Removal, Ex. 1 at 145-150.)

On October 8, 2009, Del Monte removed the action to federal court asserting diversity jurisdiction under 28 U.S.C. § 1332(a) and attaching a copy of the Complaint. On October 23, 2009, Del Monte filed an Amended Notice of Removal asserting the Class Action Fairness Act of 2005 (28 U.S.C. §1332(d))(the "Act") as an additional ground for federal jurisdiction and representing that

the Amended Notice was filed within thirty days of discovering the number of putative class members. Plaintiffs filed a motion to remand on November 6, 2009. In a Findings and Recommendation filed January 21, 2010, this court found that Del Monte had failed to present evidence establishing, by a preponderance of the evidence, that damages alleged exceeded either the $75,000 amount in controversy required under 28 U.S.C. § 1332(a) or the aggregate $5,000,000 amount in controversy required under 28 U.S.C. § 1332(d), and recommended remand of the action to state court. Judge Anna Brown adopted the Findings and Recommendation and remanded the action on April 2, 2010.

Upon remand to state court, Del Monte proceeded with discovery to obtain the information needed to support a second removal of the case to federal court and forwarded its First Request for Admissions to Plaintiffs on April 12, 2010 ("Request")(Notice of Removal, Ex. 1 at 164, 152.) Del Monte sought admissions related to the attorney's fees and costs incurred in related litigation, the attorney's fees and costs incurred in this action, the statutory and total damages sought by the class members, and the total damages sought on behalf of the class. In the Request, Del Monte advised Plaintiffs that "FAILURE TO SERVE A WRITTEN ANSWER IN THE TIME ALLOWED BY ORCP 45 WILL RESULT IN THE ADMISSION OF THE FOLLOWING REQUESTS." (Notice of Removal, Ex. 1 at 152.) OR. R. CIV. P. 45(B) requires that, in the absence of a court order allowing a shorter or longer time, a written answer to a request for admission must be served within thirty days after service of the request. Plaintiffs did not respond to the requests for admissions in a timely manner.

On May 21, 2010, Plaintiffs filed a revised motion in state court for leave to file an new version of the Second Amended Complaint ("New Second Amended Complaint"). (Notice of

Removal, Ex. 1 at 296.) In the New Second Amend Complaint, Plaintiffs included the amendments set forth in the Second Amended Complaint and added the language "AGGREGATE OF ALL CLAIMS DOES NOT EXCEED FIVE MILLION DOLLARS" to the caption as well as similar language in the background paragraphs, included some general language regarding the named plaintiffs' dates of service and the inclusion of class members when referring to plaintiffs in the clams, further defined the class as production workers, corrected grammatical errors, and renumbered the paragraphs as required by the additional language. (Notice of Removal, Ex. 1 at 298-309.) Del Monte reasserted its argument that the action should be dismissed for failure to join an indispensable party and opposed the motion to amend the First Amended Complaint as futile. (Notice of Removal, Ex. 1 at 311.) While the signed order is not part of the record, the parties agree that the state court granted Plaintiffs' revised motion to file the New Second Amended Complaint on June 4, 2010, and allowed Plaintiffs ten day to file the New Second Amended Complaint. (Notice of Removal at 2, n.1, Pls.' Mem. of Law in Supp. of Mot. to Remand at 2.)

On June 9, 2010, Remedy Intelligent Staffing ("Remedy") moved to intervene for the sole purpose of filing a motion to stay proceedings and compel arbitration. Remedy represented that it was Plaintiffs' employer pursuant to written contracts entered into by the parties and that the wage claims asserted by the Plaintiffs were subject to the arbitration clause found in those agreements. (Notice of Removal, Ex. 1 at 331-32.)

Two days later, on June 11, 2010, Del Monte filed a Notice of Removal of Action to Federal Court in this court (the "Notice") before Plaintiffs filed the New Second Amended Complaint. Del Monte again asserts that this court has diversity jurisdiction under 28 U.S.C. § 1332(a) or the Act.

*Preliminary Procedural Matters*

In the Notice, Del Monte represents that the removal is based, at least in part, on Plaintiffs'

failure to timely respond to the Request. Del Monte argues that in the absence of a timely response,

Plaintiffs have admitted, by operation of law, that the damages sought in this action exceed the

jurisdictional minimum required under both 28 U.S.C. §§ 1332(a) and (d). At oral argument, the

court advised the parties that, based on discussions which occurred at previous hearings, it would

not consider Plaintiffs' failure to timely respond to the Request as evidence of the existence of

federal jurisdiction and that Del Monte would have to support its claims of jurisdiction with

evidence that supported the actual existence of subject matter jurisdiction..

Additionally, the parties disagree on which complaint should govern the question of whether

this court has jurisdiction over this matter. Plaintiffs argue that the allegations of the New Second

Amended Complaint, which the state court allowed and ordered be filed by June 14, 2010, and which

Del Monte relied on in removing this action, should be considered by the court even though it was

not filed at the time Del Monte removed this case. Del Monte argues that the First Amended

Complaint, which was the complaint in effect at the time of removal, controls for the purposes of

determining its burden of proof on the jurisdictional issues but that the allegations of damages in the

New Second Amended Complaint should be viewed as "summary judgment type evidence" of the

amount in controversy and considered by the court in determining whether the jurisdictional

requirements have been met.

The right to remove a state action to federal court is "to be determined according to the

plaintiff's pleading at the time of the petition for removal." *Pullman v. Jenkins*, 305 U.S. 534, 537

(1939); *See also Eagle v. American Tel. and Tel. Co.*, 769 F.2d 541, 545 (9th Cir. 1985)("We

confine our analysis to the claim as presented in Eagle's initial complaint because the amount in controversy is determined from the pleadings as they exist at the time a petition for removal is filed."). While the state court had granted Plaintiffs' motion to amend the complaint at the time of removal, the New Second Amended Complaint had not been filed and was not the operative complaint at that time. Thus, the allegations of the First Amended Complaint govern the question of whether this court has jurisdiction based on either § 1332(a) or the Act, and the appropriate standard to apply for such determination.

*Legal Standard*

28 U.S.C. § 1447(c) provides:

> If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

The removal statute is strictly construed and any doubt about the right of removal is resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The presumption against removal jurisdiction means "the defendant always has the burden of establishing that removal is proper." *Id.* This same burden applies to class actions removed to federal court under the terms of the Act. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 686 (9th Cir. 2006).

*Discussion*

I. Jurisdiction Under 28 U.S.C. § 1332(a)

28 U.S.C. §1332(a) authorizes district courts to exercise original jurisdiction over civil actions in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the parties are citizens of different states. Plaintiffs argue that the $75,000 sum or

value requirement is not met in this instance.

In an action involving more than one plaintiff, the federal courts have diversity jurisdiction "where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement. . . ." *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 549 (2005). If a complaint does not specifically allege an amount in controversy, a defendant opposing a motion to remand must prove by a preponderance of the evidence, or that it is more likely than not, that the amount in controversy exceeds the $75,000 jurisdictional threshold. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007)(district court properly applied a preponderance of the evidence standard where the complaint alleged that each plaintiff's damages were less than $75,000 but the prayer for relief did not include a total dollar amount in controversy and sought several forms of relief in addition to damages); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)("Under this burden, the defendant must provide evidence that it is 'more likely than not' that the amount in controversy" satisfies the federal jurisdictional amount requirement.) When the amount in controversy is not facially apparent from the allegations in the complaint, the court may look to the facts alleged in the removal petition or summary judgment-type evidence submitted by the parties to determine whether the jurisdictional requirement was met at the time of removal. *Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir. 2004). "[R]emoval 'cannot simply be based on conclusory allegations.'" *Singer v. State Farm Mut. Auto Ins.*, 116 F.3d 373, 377 (9th Cir. 1997)(*quoting Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). If a plaintiff seeks punitive damages and statutorily authorized attorney's fees in addition to actual damages, the court may consider all three in determining the amount in controversy. *Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 240

(1943)("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount."); *Galt G/S v. JSS Scandavia*, 142 F.3d 1150, 1156 (9th Cir. 1998)("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").

The First Amended Complaint asserts claims for unpaid wages, including overtime, minimum, and wrongfully deducted wages, and for breach of the settlement agreement. Plaintiffs generally seek damages in the form of unpaid wages, statutory damages, contract damages and reasonable attorney's fees, costs and disbursements. The First Amended Complaint does not allege the specific amounts due Plaintiffs under any of the claims nor a total amount in controversy. Accordingly, the preponderance of the evidence burden applies and Del Monte must establish that it is more likely than not the value of a named plaintiff's claim exceeds $75,000.

Del Monte relies, at least in part, on the allegations in the New Second Amended Complaint to meet this burden. The Ninth Circuit has recognized that allegations made in pleadings or other documents filed after an action is removed to federal court may be considered by the district court in determining the existence of federal jurisdiction. *See Valdez*, 372 F.3d at 1117 (citing with approval other Ninth Circuit cases that allowed settlement letter and other judicial admissions to establish the amount in controversy); *Rhoades v. Progressive Cas. Ins. Co. Inc.*, No. 10-17129, 2010 WL 5139258, at *1 (9th Cir. Nov. 23, 2010)(district court erred by not considering evidentiary record to determine amount in controversy, which consisted of amended complaint filed after removal). In any event, Plaintiffs do not argue that these allegations do not properly represent the facts underlying Plaintiffs' claims.

The New Second Amended Complaint includes specific allegations of unpaid wages, including overtime, minimum and wrongfully deducted wages, penalty wages, and contract damages, for each of the named plaintiffs. Caroline C. Perez, who worked for Del Monte approximately seven months during the relevant period at an hourly rate of $16.65[1], claims damages totaling $14,439.77. Maria T. Perez, who worked for Del Monte approximately twenty months during the relevant period at a hourly rate of $9.00, claims damages totaling $22,521.40.   Plaintiffs seek, and appear to be entitled to, attorney's fees on all claims except the breach of contract claim.  Accordingly, if Del Monte has established by a preponderance of the evidence that the named Plaintiffs will collectively incur more than $104,957.20 in attorney's fees prosecuting this action, resulting in Perez's share being more than $52,478.60,  the amount-in-controversy requirement has been met.

The primary evidence offered by Del Monte in support of its assertion that Plaintiffs will incur more than $52,478.60 in attorney's fees is Plaintiffs' responses to Del Monte's discovery requests.  In their response, Plaintiffs' represent that from May 10, 2009, to August 31, 2010, they incurred nearly $125,000 in attorney's fees with $25,165.09 attributed to the claims of the named plaintiffs and $99,445.65 attributed to the class action.  Plaintiffs' estimate that they will incur an additional $36,080 in attorney's fees if this action continues as an individual action and $507,969 in attorney's fees if this action is converted to a class action.

Del Monte argues that in the absence of a class certification, all of the attorney's fees incurred by Plaintiffs to date should be attributed equally to the two named plaintiffs and that by adding half of the nearly $125,000 in fees to Perez's $22,521.40 in damages, it has clearly met the $75,000

---

[1]The wage rate was calculated by dividing the penalty wage requested by thirty days and then by eight hours.

jurisdictional requirement ($62,305.78 + $22,521.40 = $84,827.18).  Plaintiffs argue that the attorney's fees should be apportioned among the more than one hundred class members, not just the named plaintiffs, which would bring both of the named plaintiff's claims well below the jurisdictional minimum.[2]

The Ninth Circuit faced this exact issue in *Gibson v. Chrysler Corp.*, 261 F.3d 927 (9th Cir. 2001), and held that, even in the absence of a class certification, the language of the state statute which provides the authority for an award of attorney's fees determines whether the attorney's fees are attributed solely to the named plaintiffs or allocated on a pro rata basis to all class members.  In *Gibson*, various plaintiffs filed three separate state actions, all on behalf of themselves and other similarly situated plaintiffs, against the defendant for breach of warranty, unfair competition and business practices, and violation of state warranty statutes based on a defective paint finishing process.  *Id.* at 931.  The defendant removed the actions to federal court alleging the existence of diversity jurisdiction.  *Id.*  The district court granted the plaintiffs' motion to remand, denying the defendant's motion for limited discovery on the issue of the amount in controversy but advising the defendant that it could return to federal court if discovery obtained in state court revealed facts to support the requisite $75,000 amount in controversy.  *Id.*  A few months later, the defendant again removed the then-consolidated action to federal court asserting diversity jurisdiction.  *Id.* at 932.  The plaintiffs moved for remand, sanctions, and attorney's fees, all of which the district court granted, finding that the defendant's failure to establish jurisdiction after two attempts and its clearly

---

[2]Plaintiffs argue elsewhere that prospective attorney's fees should not be included in determining the amount in controversy for jurisdictional purposes.  Because the court finds that Defendants are unable to establish the jurisdictional minimums even with projected attorney's fees, the court need not address this argument here or with regard to the Act.

frivolous arguments justified remand, as well as sanctions and attorney's fees. *Id.* The defendant timely appealed. *Id.*

On appeal, the Ninth Circuit agreed with the district court's finding that defendant had failed to establish that at least one of the named plaintiffs satisfied the jurisdictional amount-in-controversy requirement. The defendant did not contend that any of the named plaintiffs had an individual claim which exceeded $75,000 but, rather, argued that the entirety of any attorney's fee award should be attributed to the named plaintiffs, and that such amount alone would exceed the $75,000 jurisdictional minimum. *Id.* at 941. The court noted that "[w]e have no doubt that attorneys' fees would exceed $75,000 per named plaintiff in this case if removal to federal court were upheld and class certification were granted", but then held that because the state statute relied on by the plaintiffs for an award of attorney's fees did not award such fees solely to named plaintiffs in a class action, "they therefore cannot be allocated solely to those plaintiffs for purposes of amount in controversy." *Id.* at 942. The Ninth Circuit distinguished the language of the California statute on which it was relying, which authorized an attorney's fee award to a "successful party," from that found to support the allocation of attorney's fees solely to the named plaintiffs in *In Re Abbott Laboratories*, 51 F.3d 524, 529 (5th Cir. 1995), stating that "[t]here, the Fifth Circuit held that the named plaintiffs' claims satisfied the amount-in-controversy requirement because the attorneys' fees were allocated solely to the named plaintiffs, or 'representative parties,' under Louisiana law." *Gibson*, 261 F.3d at 942.

Less than a month later, the Ninth Circuit again looked to a California statute to determine whether attorney's fees should be aggregated and attributed solely to the named plaintiffs for purposes of determining the amount in controversy. In *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001), the plaintiffs sought attorney's fees under a state statute that awarded

attorney's fees to "a prevailing plaintiff." The court found that the terms "successful party" and "prevailing plaintiff" were not materially different and, following *Gibson*, held that attorney's fees "must be divided among all members of the plaintiff class for purposes of amount in controversy." *Id.*

Here, Plaintiffs seek attorney's fees under OR. REV. STAT. 652.200, 652.615, and 653.055. OR. REV. STAT. 652.200 provides that in any action for the collection of wages, "the court shall, upon entering judgment for the plaintiff, include in the judgment . . . a reasonable sum for attorney fees. . . ." OR. REV. STAT. 652.615 authorizes an award of reasonable attorney's fees to "the prevailing party". Similarly, OR. REV. STAT. 653.055 provides that a "court may award reasonable attorney fees to the prevailing party in any action brought by an employee under this section." The terms used in these statutes are either identical ("prevailing party") or not materially different (a plaintiff with a judgment) from those considered by the Ninth Circuit in *Gibson* and *Kanter*. Additionally, these terms are clearly distinguishable from the term "representative parties" found to require allocation solely to the named plaintiffs in *In Re Abbott*.

In light of the reasoning of the Ninth Circuit in *Gibson and Kanter*, this court is convinced that the use of the general terms "plaintiff" and "prevailing party" by the Oregon legislature in the statutes relied on by Plaintiffs for an award of attorney fees do not support an award of such fees solely to the named plaintiffs in a class action. Accordingly, the court finds that the attorney's fees expected to be incurred in this action must be divided among all members of the class for the purposes of determining the amount in controversy.

Plaintiffs estimate that they have incurred $124,611.55 in attorney's fees to date and project that, if this case continues as a class action, they will incur an additional $507,969 in attorney's fees

or an additional $36,080 if class certification is denied. Del Monte estimates that the putative class size is between 1,428 and 1,784. Based on the figures provided by the parties and even using the larger estimate for a class action, it is clear that the attorney's fees attributed to each class member will be between $350 and $450.[3] Plaintiffs also represent that more than $1,200,000 in attorney's fees were incurred by Plaintiffs' counsel from June 15, 2007, through August 31, 2010, with an additional $78,102 expected to be incurred, in *Cortez Liborio v. Del Monte Fresh Produce*, a virtually identical class action for violations of state wage and hour laws tried to verdict in plaintiffs' favor. Even if the court were to consider this higher number as a better predictor of the total attorney's fees expected to be incurred in this action, dividing this amount among the class members results in attorney's fees of between $715 and $900 allocated to each class member ($1,203,345.43 + 78,102 = $1,281,447.43 ÷ 1,428 or 1,784 = $897 or $718). Adding the larger number to Perez's claimed damages does not bring her amount in controversy near to the required $75,000 ($22,521.40 + $900 = $23,421.40).

Based on current Ninth Circuit case law and the numbers provided by the parties relative to the amount of attorney's fees expected to be incurred in litigating this action and the number of class members, Del Monte has failed to establish, by a preponderance of the evidence, that the jurisdictional amount-in-controversy requirement has been met. This court does not have diversity jurisdiction under 28 U.S.C. § 1332(a).

## II. Jurisdiction Under 28 U.S.C. § 1332(d)

In the Notice, Del Monte asserts the Act as an alternative basis of subject matter jurisdiction.

---

[3] This range is calculated by taking $124,611.55 + 507,969 = $632,580.55 ÷ 1,428 or 1,784 = $443 or $355.

The Act provides, in pertinent part, that:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which --
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

28 U.S.C. § 1332(d)(2) (2007). The Act further provides that "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6) (2007). The same preponderance of evidence standard applies to complaints that do not specify a particular amount in controversy in actions that have been removed to federal court under the Act. *Abrego*, 443 F.3d at 683.

Del Monte asserts that the class members and defendant are citizens of different states, the aggregate amount in controversy exceeds $5,000.000, and the number of members of all putative subclasses exceeds 100 individuals. Plaintiffs dispute only the valuation of the aggregate amount in controversy.

In support of its position, Del Monte estimates the amount in controversy under the Act is $5,164,147.73 based on information provided by Plaintiffs and Remedy. Specifically, Del Monte estimates Plaintiffs' claims for damages as follows:

| | |
|---|---|
| Statutory Penalties for Overtime Violations | $2,339,424.00 |
| Statutory Penalties for Minimum Wage Violations | $1,109,088.00 |
| Damages for Wrongfully Deducting Wages | $ 271,200.00 |
| Unpaid Wages | $ 132,427.04 |

Page 16- FINDINGS AND RECOMMENDATION                    *{SIB}*

| | |
|---|---|
| Unpaid Minimum Wages | $    5,719.76 |
| Unpaid Overtime Wages | $   24,841.50 |
| Attorneys' Fees | $1,281,447.43 |

Plaintiffs contend that the estimates for overtime penalties, minimum wage penalties, and attorney's fees are all overstated. Plaintiffs assert that a primary assumption upon which Del Monte's estimate is based – that class members are entitled to all of the damages they allege in the First Amended Complaint – is false. Plaintiffs also argue that projected attorney's fees should not be considered and that Del Monte's prediction is based on attorney's fees incurred in *Liborio* without addressing the differences between the two cases. Because the court finds that Del Monte has failed to establish, by a preponderance of the evidence, that Plaintiffs will incur attorney's fees in excess of $1,117,299.70 in this case, the court need not address the other two arguments.

Plaintiffs estimate that they will incur a total of $632,580.55 in attorney's fees to litigate this action as a class action. Using this figure, and those provided by Del Monte for damages and statutory penalties, it appears that the amount in controversy is $4,545,280.85, a total amount below the statutory minimum for federal jurisdiction under the Act. Rather than relying on Plaintiffs' estimate, which clearly does not reach the statutory minimum, Del Monte instead relies on the amount of attorney's fees incurred by Plaintiffs' counsel in *Liborio*, which is $1,281,447.43 ($1,203,345.43 incurred through August 31, 2010, and an additional $78,102.00 projected), resulting in an increase in the amount in controversy to $5,164,147.73, a figure that is $164,173.73 over the jurisdictional minimum.

Del Monte's sole justification for using the higher figure is the statement made by Carol Bernick in her declaration that she "find[s] that the $632,580.55 amount is inconsistent when viewed

in the context of the attorneys' fees allegedly incurred by Plaintiffs' counsel in *Liborio*." (Bernick Decl. ¶ 20.) Bernick does not offer a more reasonable estimate for attorney's fee to litigate this action, nor does she address the likely effect of counsels' experience in wage and hour actions against Del Monte and its contractors gained in *Liborio*. On the other had, Plaintiffs do address the knowledge gained by their counsel and explain how it will decrease the total attorney's fees incurred by them in litigating this action.

First, Plaintiffs point out that *Liborio* began with a workplace raid by immigration authorities resulting in the absence of available class members, who had been deported, and time and attendance records, which had been taken by the authorities. Here, most class members and almost all of the records are readily available and easily accessible. In fact, Del Monte has used the records provided to both determine the size of the class and the identities of the class members, as well as the wages earned and the hours worked by each class member, and the expected damages and statutory penalties. This factor would undeniably support a reduction in the attorney's fees incurred by Plaintiffs' counsel in *Liborio*.

Second, Plaintiffs' counsel gained experience in litigating the joint employer issue present in *Liborio* that very likely will reduce their time in the instant case. The information gained by Plaintiffs' counsel with regard to Del Monte's relationship with its labor contractors will lessen the time attorneys need to spend to understand and litigate this issue. Finally, Plaintiffs' counsel will be able to borrow from their work litigating the class certification issue in *Liborio*, likely streamlining the process and resulting in a decrease in attorney time expended on class certification issues in this action.

As noted in the Findings and Recommendation issued in the First Action, this court is

confident that the experience gained in the successful litigation by Plaintiffs' counsel of the prior wage and hour claims against Del Monte will aid the lawyers in litigating this action and will reduce the attorney's fees incurred by Plaintiffs in this action. Even if the court assumes that the benefit will be equal to a minimal 10% reduction in the *Liborio* attorney's fees, Plaintiffs will incur no more than $1,153,302.69 in attorney's fees in this action, which is still insufficient to meet the required $5,000,000 minimum when added to the damages and penalties estimated by Del Monte. Accordingly, the court finds that Del Monte has failed to establish, by a preponderance of the evidence, that Plaintiffs' class action represents an amount in controversy in excess of $5,000,000 as required for federal jurisdiction under the Act.

III. Attorney's Fees

Both parties seek attorney's fees pursuant to 28 U.S.C. § 1447(c). Under the statute "an order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c) (2007). The Supreme Court recently faced the issue of when attorney's fees should be awarded under § 1447(c). In *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005), the Court held that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal."

Del Monte seeks attorney's fees related to the preparation and filing of the Notice and opposition to remand arguing that had Plaintiffs timely responded to Del Monte's Request, Del Monte would not have had to incur costs associated with removal. The court declines to base a fee award on this fact. First, Del Monte's decision to remove this action was purely voluntary. Plaintiffs' failure to timely respond to requests for admissions did not obligate Del Monte to file the

Page 19- FINDINGS AND RECOMMENDATION                                    {SIB}

Notice. More likely, Del Monte filed the Notice because of the impending expiration of the one-year removal period for diversity actions under § 1332(a) coupled with it's desire to have this action litigated in federal court. However, the admissions sought in the Request appear to be based primarily on the assumption that the case would proceed as a class action, did not address jurisdictional requirements in the event the case continued as an individual action, and did not provide the information needed to establish jurisdiction under § 1332(a). Therefore, Plaintiffs' failure to respond to the Request did not provide support for jurisdiction based on the individual claims of the named plaintiffs.

Second, even after Del Monte became aware that this court would not rely on Plaintiffs' failure to respond to the admission requests, Del Monte vigorously pursued additional discovery to support the removal and filed a lengthy opposition memorandum with attached exhibits rather than stipulate to a remand . Del Monte's decision to move forward with additional discovery after the court's ruling deprived it of the requests for admission as a basis for removal demonstrates that the requests for admission answers were not the sole factor in Del Monte's decision to remove this case a second time. Thus, the fact that Del Monte referred to, and relied on, other evidence obtained from Plaintiffs' in support of the Notice, such as the attorney's fees incurred in *Liborio*, is evidence that Plaintiffs' timely response to the Request would not have dissuaded Del Monte from filing the Notice.

On the other hand, Plaintiffs' failure to respond timely to the Request provided Del Monte with additional evidence and objectively reasonable grounds to remove this action to federal court. Had this court determined that it would view the failure to respond timely as an admission, Plaintiffs would have been deemed to admit that the putative class was seeking in excess of $5,000.000. Del

Page 20- FINDINGS AND RECOMMENDATION                                        *{SIB}*

Monte had a legitimate basis for removing this case. For this reason alone, Plaintiffs' request for attorney's fees should be denied.

### Conclusion

Plaintiffs' motion (#9) to remand should be GRANTED and the requests for attorney's fees should be DENIED.

### Scheduling Order

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due **May 27, 2011**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 12th day of May, 2011.

JOHN V. ACOSTA
United States Magistrate Judge